[No. 32665-1-I.   Division One.   August 15, 1994.]

ESTATE OF PHILLIP W. SLY, *Respondent,* v. GEORGE P. LINVILLE, ET AL, *Appellants.*

*Douglass A. North* and *Maltman, Reed, North, Ahrens & Malnati, P.S.,* for appellants.

*Thomas P. Graham III, Nancy K. Bourgois,* and *Russo & Graham,* for respondent.

COLEMAN, J. — George P. Linville appeals the judgment against him for negligent misrepresentation, arguing (1) the action was barred by collateral estoppel, (2) the action was not brought within the 8-year maximum statute of limitation provided in RCW 4.16.350, (3) the action was not brought within the 3-year statute of limitation for fraud and negligence, (4) he did not have a sufficient pecuniary interest in the statements to support the claim, (5) as a potential witness, he was immune from liability, and (6) liability should have been apportioned between him and Dr. Nelson, the other physician involved. We affirm.

In 1982, Phillip Sly began seeing Dr. Ian Nelson regarding cramping and tightness in his left calf. After completing some vascular tests, Dr. Nelson told Sly that the blood flow to his leg was 30 to 35 percent blocked and recommended that Sly undergo surgery to increase the blood flow to the leg.

The bypass surgery took place on July 20, 1982. Following the surgery, complications developed that involved clotting and decreased blood flow to the leg. Nelson performed another surgery but was unable to correct the problem. He requested assistance from Dr. Linville, who performed a third surgery that was successful in restoring blood flow to the leg.

After the surgeries, Sly asked Linville to become his primary physician. He also expressed concern to Linville about the treatment he had received from Nelson. However, Linville told him that "in cases like this that . . . sometimes just happens" and that "Dr. Nelson had given . . . the best of care". In November 1982, Sly was still concerned about Nelson's treatment and contacted attorney Paul Acheson. Linville told Acheson that there were no problems or con-

cerns with the care Nelson had provided and that the problems Sly experienced were typical. Acheson subsequently told Sly that he did not believe Sly had a cause of action against Nelson.

Sly moved to California shortly thereafter, where he began seeing Dr. K.J. Smallwood. On December 20, 1982, Linville wrote Smallwood a letter in which he criticized Nelson's surgical techniques and stated that alternatives to surgery had been available. Sly did not discover this letter until 1986, when he asked to see his medical records.

After discovering Linville's letter, Sly immediately contacted an attorney and commenced a lawsuit against Nelson. In July 1989, a jury awarded him $234,000, but the Court of Appeals reversed the judgment on the ground that the statute of limitation had expired prior to the initiation of the lawsuit.[1]

Sly died in 1989, and his wife, acting on behalf of his estate, commenced a wrongful death action against Nelson, which was settled for $150,000. In August 1991, the Estate filed the present lawsuit against Linville, claiming that Linville's misrepresentations led Sly to delay the filing of a suit against Nelson, thereby causing his claims to be barred. The trial court found in favor of the Estate, and Linville appeals.

We initially consider whether the action against Linville was barred by collateral estoppel.

■■ Collateral estoppel and res judicata are similar doctrines that have judicial finality as a common goal. Collateral estoppel, also known as issue preclusion, prevents a second litigation of issues between the same parties. The elements of collateral estoppel are: (1) identical issues; (2) a final judgment on the merits; (3) privity of the party against whom the plea is asserted with a party to the prior adjudication; and (4) no resulting injustice on the party against whom the doctrine is to be applied. *Malland v. Department*

---

[1]The Court of Appeals reasoned that the statute began running in 1982 because, by that time, Sly had discovered some information about each of the four elements of a possible cause of action against Dr. Nelson.

*of Retirement Sys.*, 103 Wn.2d 484, 489, 694 P.2d 16 (1985) (citing *Rains v. State*, 100 Wn.2d 660, 674 P.2d 165 (1983)). A court will not apply collateral estoppel if, because of ambiguity or indefiniteness, it is unclear whether the issue was previously determined. *Henderson v. Bardahl Int'l Corp.*, 72 Wn.2d 109, 118, 431 P.2d 961 (1967) (quoting 2 Lewis H. Orland, Wash. Prac., *Rules Practice* § 387, at 417 (2d ed. 1965)).

In *Hanson v. Snohomish*, 121 Wn.2d 552, 554, 852 P.2d 295 (1993), Hanson previously had been charged with and convicted of first degree assault. At his criminal trial, he had argued that the pretrial identification procedures were impermissibly suggestive. The trial court and the Court of Appeals determined that the procedures were permissible, but the Court of Appeals reversed the conviction and remanded for a new trial on the ground that the trial court had admitted irrelevant and prejudicial evidence. On remand, Hanson was acquitted. *Hanson*, at 555.

Hanson subsequently sued the City of Snohomish for malicious prosecution, false arrest and imprisonment, negligent investigation, and civil rights violations. Each of these claims was based on his argument that the pretrial identification procedures were unduly suggestive. The trial court granted summary judgment to Snohomish on the ground that the identification procedures issue was barred by collateral estoppel. The Supreme Court affirmed the trial court, stating:

> The challenges, the evidence and the arguments Hanson presents in the present civil case are identical to those presented to the trial court at the suppression hearing and to the Court of Appeals[.] The issue was and is whether the Snohomish police impermissibly manipulated identification evidence. We thus find the element of identity of issues is met for purposes of collateral estoppel.

(Citation omitted.) *Hanson*, at 563. The court also concluded that application of the doctrine would not work an injustice because Hanson had been given, in his criminal trial, an adequate opportunity to present his evidence and arguments to the trial court and Court of Appeals. *Hanson*, at 563.

Linville analogizes this case with *Hanson* and argues that this court's decision in *Sly v. Nelson*, cause 24669-1 (Aug. 6, 1990) collaterally estops the Estate from bringing a negligent misrepresentation action against him. Specifically, he argues that *Sly v. Nelson, supra*, which held that by 1982 Sly knew or should have known all the elements of his cause of action, bars Sly from claiming that he justifiably relied on Linville's statements. Furthermore, Linville argues, it was clear that Sly did not rely on Linville's statements because despite Linville's assurances, Sly hired an attorney to investigate the matter.

In *Nelson*, this court applied the discovery rule to determine whether the statute of limitation precluded Sly's action against Nelson.[2] Sly argued that he had no facts concerning duty, breach of duty, or causation until January 1986 when he discovered Linville's letter. The court rejected this argument, reasoning that in order to start the running of the 1-year limitation, "Sly did not have to be *certain* that all the elements of a cause of action could be established; he only needed to discover 'some information' about each of the four elements of a '*possible* cause of action' ". *Nelson*, slip op. at 10. According to the court, Sly had this information by the latter half of 1982 and was therefore barred from filing the 1986 suit.[3]

We agree with the Estate that the issues in this case and in *Nelson* are not identical. Although there are similarities, *Nelson* did not address whether Sly justifiably relied on Linville's statements in deciding not to file suit immediately

---

[2]Under the discovery rule of RCW 4.16.350, "a plaintiff's claim does not accrue until he discovers or reasonably should have discovered all the essential elements of a possible cause of action: duty, breach, causation, and damages." *Nelson*, slip op. at 7 (citing *Olson v. Siverling*, 52 Wn. App. 221, 227, 758 P.2d 991 (1988), *review denied*, 111 Wn.2d 1033 (1989)). The 1-year provision in RCW 4.16.350 allows a plaintiff 1 year from the time of discovery to file suit.

[3]Specifically, the court stated: "The discovery of the duty element is established by Sly's persistent inquiries to Dr. Linville and the two attorneys regarding whether Dr. Nelson's treatment of him was adequate. Thus, Sly had some information about a duty owed by Dr. Nelson." The court also determined that Sly had knowledge of Nelson's breach of duty, causation, and damage. *Nelson*, slip op. at 11.

after his surgeries. In *Nelson*, the issue was "at what point
did Sly have 'some knowledge' of the elements of his cause
of action?". The court concluded that Sly had, or should
have had, "some knowledge" of these elements by the lat-
ter part of 1982. However, the court did not address
whether Sly relied on Linville's statements. Moreover, a
conclusion that a person has "some knowledge" of the ele-
ments of his cause of action does not equal a conclusion
that his reliance on other, contrary, information was un-
justifiable.[4] Thus, we hold that the issues are not identical.

Linville further argues that because Sly hired an attorney
to investigate the matter, the Estate cannot argue that Sly
relied on Linville's statements. However, Linville's state-
ments not only dissuaded Sly from filing the lawsuit, they
also discouraged Sly's attorney.[5] It is clear from the record
that both Sly and his attorney relied on Linville's statements
in deciding not to pursue the action against Nelson.

█ Finally, in his reply brief, Linville argues that under
*Hanson*, identity of issues is not required and collateral
estoppel applies whenever the same evidence is used to
prove two issues. However, contrary to Linville's claim, the
plaintiff's use of the same evidence in *Hanson* was merely
one factor used to show an identity of issues. *See Hanson*, at
563. Thus, even if the same evidence was used here and in
*Nelson*, we conclude that the trial court did not err in refus-
ing to apply collateral estoppel because the issues in the two
cases are sufficiently distinct.

We next determine whether the action was barred by the
8-year maximum statute of limitation provided in RCW
4.16.350.

█ RCW 4.16.350(3) provides in part:

Any civil action *for damages for injury occurring as a result
of health care . . .*

. . . .

---

[4]As the Estate argues, justifiable reliance is equivalent to a lack of contributory
negligence. *See Condor-Enters., Inc. v. Boise Cascade Corp.*, 71 Wn. App. 48, 52, 856
P.2d 713 (1993).

[5]In fact, the record showed that Sly hired several attorneys to investigate the
matter and each attorney gave him the same advice.

> . . . based upon alleged professional negligence shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later, except that *in no event shall an action be commenced more than eight years after said act or omission*: PROVIDED, That the time for commencement of an action is tolled upon proof of fraud, intentional concealment, or the presence of a foreign body not intended to have a therapeutic or diagnostic purpose or effect.

(Italics ours.) Because the statute of limitation is an affirmative defense, the burden is on the party asserting it to prove the facts which establish it. *Haslund v. Seattle*, 86 Wn.2d 607, 547 P.2d 1221 (1976).

Linville argues that because the trial court found that his statements to Sly were made during the course of the physician/patient relationship, the 8-year maximum statute of limitation in RCW 4.16.350 must be applied to this case.[6] He also argues that under RCW 7.70.010,[7] *any action* brought against a health care practitioner is covered by the health care act of 1976. The Estate, on the other hand, argues that the 8-year limitation in RCW 4.16.350 does not apply because although the statements were made during the course of the physician/patient relationship, they do not constitute "health care". The Estate further argues that RCW 7.70.030 supports its position because it limits the types of actions that may be brought for injury occurring as a result of health care, and the present action is not included among those actions listed.[8]

---

[6]Linville's statements were made in mid-1982, and this case was filed in mid-1991.

[7]RCW 7.70.010 provides:

"The state of Washington, exercising its police and sovereign power, hereby modifies as set forth in this chapter and in RCW 4.16.350, as now or hereafter amended, certain substantive and procedural aspects of all civil actions and causes of action, whether based on tort, contract, or otherwise, for damages for injury occurring as a result of health care which is provided after June 25, 1976."

[8]RCW 7.70.030 provides in part:

"No award shall be made in any action or arbitration for damages for injury occurring as the result of health care which is provided after June 25, 1976, unless the plaintiff establishes one or more of the following propositions:

The Estate cites several cases from other jurisdictions to support its argument that the tort of misrepresentation is separate and distinct from a claim for medical malpractice. In *Tighe v. Ginsberg*, 146 A.D.2d 268, 540 N.Y.S.2d 99 (1989), a physician, without consent, wrote a letter to his patient's employer outlining the patient's medical condition and revealing other confidential matters. The patient sued the physician for breaching his fiduciary duty of confidentiality. The court held that the statute of limitation for medical malpractice did not apply to the cause of action, stating:

> Although in a general sense a doctor furnishes medical care to patients, clearly not every act of negligence toward a patient constitutes medical malpractice. *The gravamen of plaintiff's complaint in the instant action is not defendants' malpractice in furnishing medical treatment to him, but rather defendants' failure in fulfilling his independent duty not to disclose confidential information without plaintiff's consent.* Defendants' alleged breach of this duty did not arise during the process in which Dr. Ginsberg was utilizing the skills which he had been taught in examining, diagnosing, treating or caring for the plaintiff as his patient.

(Citations omitted. Italics ours.) *Tighe*, at 271.

In *Estate of Leach v. Shapiro*, 13 Ohio App. 3d 393, 469 N.E.2d 1047 (1984), physicians placed a comatose patient on life support systems for several months, contrary to the express wishes of the patient and her family. After the patient died, her family sued the physicians for failing to obtain consent and failing to inform the family of the patient's condition or prognosis for several months. Regarding the latter claim, the court concluded that a physician's nondisclosure may give rise to an action in fraud independent of malpractice. *Leach*, at 397. The court stated:

> [A] fiduciary relationship exists between the physician and patient. When the physician has knowledge of a fact concerning the patient's physical condition which is material to the

"(1) That injury resulted from the failure of a health care provider to follow the accepted standard of care;

"(2) That a health care provider promised the patient or his representative that the injury suffered would not occur;

"(3) That injury resulted from health care to which the patient or his representative did not consent."

patient, this fiduciary relationship may render the physician's silence fraudulent.

*Leach*, at 397.

■ ■ · We find Linville's attempts to distinguish these cases unpersuasive. In addition, Linville's reliance on RCW 7.70.010 is misplaced because under that provision, the claim must still be "for damages for injury occurring as the result of health care" in order to be covered by the act. Here, however, the claim results not from health care but from misrepresentations made by Linville. In other words, Linville's breach of duty did not arise during the process in which he "was utilizing the skills which he had been taught in examining, diagnosing, treating or caring for" Sly, but arose during his discussions with Sly about Nelson. *See Tighe*, at 271. The fact that the misrepresentations were made during the course of the physician/patient relationship does not automatically render them "health care" for purposes of the statute of limitation. Thus, we conclude that the 8-year limitation in RCW 4.16.350 does not apply to this case.

The judgment of the trial court is affirmed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

SCHOLFIELD and AGID, JJ., concur.