# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

SEBASTIAN GONZALEZ,

                   Respondent,

     v.

PIERCE COUNTY EXECUTIVES BRUCE
DAMMEIER AND PAT MCCARTHY,
COUNTY OF PIERCE, PIERCE COUNTY
SHERIFF'S DEPARTMENT, PIERCE
COUNTY JAIL, ACTING SERGEANT(S) OF
PIERCE COUNTY JAIL (FROM 7/8/15-
PRESENT), JOHN DOE(S), PIERCE
COUNTY SHERIFF'S DEPUTY N. LEE #01-
052, PIERCE COUNTY SHERIFF'S
DEPUTY T. DICKERSON #96-086, PIERCE
COUNTY SHERIFF'S DEPUTY DEFLIPPIS,
PIERCE COUNTY SHERIFF'S DEPUTY
#96-016; PIERCE COUNTY SHERIFF'S
DEPUTY #05-004, PIERCE COUNTY JAIL
CLINIC STAFF MEMBERS WHO
TREATED PLAINTIFF FOR INJURIES ON
7/8/15,

                   Petitioners,

CORRECT CARE SOLUTIONS, LLC, a
Limited Liability Company doing business in
Washington State,

                   Defendant.

No. 55120-9-II

UNPUBLISHED OPINION

MAXA, J. – Pierce County seeks review of the trial court's denial of summary judgment regarding Sebastian Gonzalez's negligence claim against the County. The claim relates to injuries Gonzalez sustained when he fell down the stairs while detained in the Pierce County

Detention and Corrections Center (PCDCC). He asserts that he was negligently placed in a cell located on the second tier of the PCDCC despite his documented history of chronic multiple sclerosis, which made it difficult for him to walk.

Gonzalez's multiple sclerosis was noted at intake by Correct Care Solutions LLC (CCS), the County's medical contractor, when Gonzalez was incarcerated in the PCDCC less than a month before the fall. During that incarceration, he was housed on the lower tier because of his multiple sclerosis. At a second intake a week before the fall, Gonzalez's multiple sclerosis again was noted but he was placed on the second tier of the PCDCC. He alleges that he tripped and fell while using the stairs to access food located on the lower tier.

We hold that there are genuine issues of material fact as to whether (1) the decision where to house Gonzalez during his second incarceration in the PCDCC was made by the County or by CCS, (2) the decision to place Gonzalez in a cell on the second tier during his second incarceration was a breach of both the County's and CCS's duty to safely house him, and (3) the County's and CCS's alleged breach of its duty was a proximate cause of Gonzalez's injury. Accordingly, we affirm the trial court's denial of the County's summary judgment motion.

FACTS

*Background*

Gonzalez was diagnosed with multiple sclerosis in 2008. Since then, his condition had progressively worsened and caused increased weakness in his limbs. It was difficult for him to walk in a straight line. Walking up or down stairs was especially difficult. By 2015, Gonzalez walked with a noticeable limp such that people believed he was intoxicated when he was in

public places because he was very unstable and looked like he was about to fall over when he walked.

The PCDCC consisted of least two floors, otherwise referred to as tiers. The only way for inmates to access food at meal times was by picking up a meal tray from the lower tier. And after eating, inmates had to return their trays to the lower tier.

At the time of the incident, CCS served as the County's medical contractor and conducted preliminary medical examinations for new inmates. As part of the intake process, a CCS booking nurse completed a six-page receiving screening document that consisted of a series of checkboxes regarding an inmate's general health. The receiving screening document included a section for documenting an inmate's health issues and a section titled "Placement/Housing" with a number of checkboxes, including whether an inmate was fit for general population.

The County generated a separate information report as part of the booking process for an inmate. Under the booking information section, the information report listed which officer booked an inmate and what cautions were noted at booking.

*First Admission to PCDCC*

On June 12, 2015, Gonzalez was incarcerated in the PCDCC. A CCS booking nurse conducted a medical examination of Gonzalez and completed the receiving screening document regarding his general health. The nurse noted in the "Patient Problems" section that Gonzalez suffered from chronic multiple sclerosis, but the nurse stated in the "Placement/Housing" section that he could be released to the general population.

That same day, a notation on the County-generated information report stated "Low Bunk/Tier – Multiple Sclerosis" after "Cautions noted at booking." Clerk's Papers (CP) at 388. The County observation report stated, "Report: please place [inmate] low bunk/low tier for

3

duration of stay. [Inmate] can use wheelchair for long distance of transportation." CP at 394. Gonzalez was placed on the lower tier.

*Second Admission to PCDCC*

On July 1, Gonzalez again was incarcerated in the PCDCC and went through the same intake process as for his earlier incarceration on June 12. The CCS receiving screening document referenced that Gonzalez had multiple sclerosis as observed at the June 12 intake. The receiving screening document again noted that Gonzalez could be released to the general population. Unlike on the June 12 intake, the County-generated information report did not include any notation that Gonzalez needed a low bunk/tier placement. The "Cautions noted at booking" line was left blank. CP at 390. Gonzalez was placed in a cell on the second tier.

On July 5, the County's information report stated that Gonzalez was moved to a different cell for an "OJC move," a notation not explained in the record. CP at 181. Gonzalez remained on the second tier.

On July 8, Gonzalez was taking his meal tray from breakfast down the stairs when he tripped and fell. Multiple inmates confirmed that Gonzalez had fallen down the stairs, but none of the correctional officers saw the actual fall. Gonzalez sustained scratches on his knees and elbow and started limping more heavily because of a leg injury.

Gonzalez was taken to medical and then was transferred to a cell located on the lower tier. The County observation report dated July 8 stated that he should have a low bunk/low tier due to his "chronic medical concern." CP at 392.

*Complaint and Summary Judgment*

Gonzalez filed a complaint against a number of people associated with the County and the PCDCC and against CCS, asserting various federal and state causes of action. The causes of

action included multiple claims under 42 U.S.C. § 1983, negligent infliction of emotional distress, disability discrimination, and records retention claims.

Gonzalez later filed an amended complaint that added general negligence of the County and related defendants as a new cause of action. Gonzalez's complaint alleged that the County and its officials, officers, and departments breached their duty to safely house him and provide him with safe access to food and water. The amended complaint alleged that Gonzalez fell down the stairs as a result of his placement on the second floor, and that the actions of the County and its agents were the proximate cause of his injuries. Gonzalez did not assert this general negligence cause of action against CCS.

The County filed a summary judgment motion on Gonzalez's negligence claim, arguing a lack of evidence that (1) it had breached its duty of care and (2) the housing placement was a proximate cause of Gonzalez's injury. The motion was supported by a declaration from PCDCC correctional captain Brian Sutherlin.

Sutherlin stated in his declaration that CCS was the County's medical contractor at the time of the incident and that CCS generated the receiving screening document. Sutherlin noted that the CCS booking nurse determined that Gonzalez had no special needs for housing and could be assigned to general population. In addition, the County generated Gonzalez's information report and that no cautions were noted at booking. Sutherlin stated that neither he nor any other County correctional officer determined where inmates with medical issues were housed or assigned inmates to low bunk/low tier because of medical conditions. He stated that CCS made those determinations.

Gonzalez submitted a declaration in opposition to the County's summary judgment motion. He explained how multiple sclerosis affected his ability to walk as summarized above.

Gonzalez also alleged that his multiple sclerosis was very obvious and that it was very obvious to anyone watching him that it was very difficult for him to walk stairs. In addition, he stated that it was very difficult for him to walk the stairs for meals when he was housed on the second floor. He stated that every day he struggled to walk up and down the stairs for meals.

Gonzalez stated that within one day of the July 1 intake, he complained to a correctional officer that he was not supposed to be on the second tier because of his multiple sclerosis. The correctional officer told him to write a kite (a medical request form) to medical, which he did, but it had no effect. As a result, Gonzalez stated that he wrote a second kite but that he received no response. Gonzalez's description of his fall was as follows: "On July 8, 2015, I was taking my tray down from breakfast when I tripped and fell." CP at 315.

The trial court dismissed under CR 12(b)(6) all of Gonzalez's claims asserted in his amended complaint against the County and related entities other than his negligence claim. Regarding the County's summary judgment motion on the negligence claim, the court granted Gonzalez's CR 56(f) motion for additional time to conduct discovery on the issues of breach of duty and causation.

The County subsequently renoted its summary judgment motion. CCS also filed a summary judgment motion regarding any medical negligence claims Gonzalez had asserted. At that point, Gonzalez still had not conducted any depositions, requested any written discovery, or identified any supporting expert testimony. The trial court denied the County's and CCS's summary judgment motions. However, the court later granted CCS's CR 12(b)(6) motion and dismissed all claims against CCS for failure to state a claim upon which relief could be granted.

The trial court found that the order denying the County's summary judgment motion involved a controlling question of law that warranted immediate appellate review and certified

6

the case to this court under RAP 2.3(b)(4). A commissioner of this court granted discretionary review.

The County seeks review of the trial court's order denying its motion for summary judgment.

ANALYSIS

A.    SUMMARY JUDGMENT STANDARD

We review summary judgment orders de novo. *Sartin v. Estate of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020), *review denied,* 196 Wn.2d 1046 (2021). We view all the evidence and apply reasonable inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate only when there are no genuine issues of material fact. *Id.* A genuine issue of material fact exists "when reasonable minds could disagree on the facts controlling the outcome of the litigation." *Id.*

The following procedure applies when a defendant moves for summary judgment based on the absence of evidence:

> The party moving for summary judgment bears the initial burden to show there is no genuine issue of material fact. A moving defendant can meet this burden by demonstrating the plaintiff cannot support his claim with any evidence. After the defendant has made such a showing, the burden shifts to the plaintiff to present specific facts that reveal a genuine issue of material fact. Summary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which he or she will have the burden of proof at trial.

*Id.* (internal citations omitted.)

In a negligence case, the plaintiff must show a genuine issue of material fact on each element – duty, breach, causation and damage – to avoid summary judgment. *Mortensen v. Moravec*, 1 Wn. App. 2d 608, 614, 406 P.3d 1178 (2017).

B.       BREACH OF DUTY

The County argues that the trial court erred in denying its summary judgment motion regarding negligence because there is no genuine issue of material fact as to whether the County breached a duty of care to Gonzalez.  We disagree.

1.     Legal Principles

Jails owe inmates an affirmative duty to ensure their "health, welfare, and safety." *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 635, 244 P.3d 924 (2010) (plurality opinion); *see also In re Pers. Restraint of Williams*, 198 Wn.2d 342, 359, 496 P.3d 289 (2021) (noting this "long-standing and special duty" as a matter of tort law).  Jailers must keep inmates free from harm and are liable for any breach of duty resulting in injury to an inmate.  *Gregoire*, 170 Wn.2d at 635.  This duty arises from the special relationship jailers have with inmates based on the complete control jailers have over inmates who are deprived of liberty.  *Id.*

The duty to ensure the health and safety of inmates is nondelegable.  *Id.* (citing *Shea v. City of Spokane*, 17 Wn. App. 236, 242, 562 P.2d 264 (1977), *aff'd*, 90 Wn.2d 43 (1978)).  *Shea* involved alleged negligent medical treatment of an inmate by a jail physician.  17 Wn. App. at 239-40.  The court stated, "[T]he duty is so intertwined with the responsibility of the [jailer] as custodian that it cannot be relieved of liability for the negligent exercise of that duty by delegating it to an 'independent contractor' physician. . . .  [T]he [jailer's] liability includes the negligence of the jail physician because the duty to keep the prisoner in health is nondelegable." *Id.* at 242.

2.     Involvement of County in Housing Decision

The County asserts that it cannot be liable because only CCS and not jail staff decided whether an inmate had a medical condition that required special low bunk/low tier housing.  The

County suggests that it had no involvement regarding Gonzalez's placement. However, the evidence is not as clear as the County claims.

When Gonzalez was booked into the jail on June 12, the CCS nurse noted that Gonzalez suffered from chronic multiple sclerosis. But the nurse stated in the "Placement/Housing" section of the form that he could be released to the general population. Despite this statement, the *County's* form stated "Low Bunk/Tier – Multiple Sclerosis" after "Cautions noted at booking." CP at 388. And the County observation report stated, "Report: please place [inmate] low bunk/low tier for duration of stay." CP at 394. Presumably based on this directive, Gonzalez was placed on the lower tier.

After Gonzalez was incarcerated on July 1 and placed in a second tier cell, he was moved to a different cell on the second tier. There is nothing in the record indicating that CCS recommended the move. This evidence suggests that the County retained control over inmate housing after the initial admission.

After Gonzalez's fall, there is nothing in the record indicating that CCS recommended that he be moved to the lower tier. Instead, it was the County's observation report dated July 8 that stated that he should have a low bunk/tier because of his chronic medical condition.

We must view all reasonable inferences in the light most favorable to Gonzalez. *Sartin*, 15 Wn. App. 2d at 172. The County's forms suggest that even though CCS determined that Gonzalez could be released into the general population at his June 12 intake, a corrections officer determined that he should be given a low bunk/ low tier placement. These forms allow a reasonable inference that the County and not CCS made the final determination as to where Gonzalez should be housed.

9

We conclude that a genuine issue of material fact exists as to whether the County was involved in the decision where to house Gonzalez at the July 1 intake.

### 3. County's Breach of Duty

Assuming that the County was involved in the decision of where to house Gonzalez, evidence exists to create a genuine issue of fact regarding breach of its duty to ensure Gonzalez's safety. Less than three weeks before Gonzalez's July 1 incarceration, the CCS nurse noted that Gonzalez had chronic multiple sclerosis. The County's forms stated that he should be given a low bunk/low tier placement because of his multiple sclerosis. And at the July 1 intake, the CCS screening document again referenced that Gonzalez had multiple sclerosis. Viewing this evidence in the light most favorable to Gonzalez, the County knew or should have known that Gonzalez should have been housed on the lower tier for his safety upon his July 1 admission.

Further, Gonzalez claimed that within a day after his July 1 incarceration he told a corrections officer that he was not supposed to be on the second tier because of his multiple sclerosis. He also claimed that his multiple sclerosis was very obvious, that it was very obvious to anyone watching him that it was very difficult for him to walk stairs, and he struggled every day to walk up and down the stairs for meals. The County argues that there is no evidence that any corrections officer actually saw Gonzalez's struggles. But that fact can be inferred if it was very obvious that Gonzalez had difficulties because corrections officers presumably are carefully watching the inmates. Viewing this evidence in the light most favorable to Gonzalez, the County knew or should have known that Gonzalez should have been moved to the lower tier for his safety.

We conclude that a genuine issue of material fact exists as to whether the County breached its duty to ensure Gonzalez's safety.

4. CCS's Breach of Duty

Gonzalez did not assert a general negligence claim against CCS, and CCS has been dismissed from this action. But CCS's negligence is relevant to the County's liability because as noted above, jailers have a nondelegable duty to ensure the health and safety of inmates. *Gregoire*, 170 Wn.2d at 635. When there is a nondelegable duty, the principal remains liable for the torts of an independent contractor. *Knutson v. Macy's West Stores, Inc.*, 1 Wn. App. 2d 543, 547, 406 P.3d 683 (2017). Therefore, even if CCS was the exclusive decision maker regarding Gonzalez's placement, the evidence shows that there are genuine issues of fact as to whether CCS, acting as the County's agent, breached a duty by housing Gonzalez on the second tier.

CCS knew at intake on July 1 that Gonzalez had chronic multiple sclerosis. Gonzalez claimed that he had a noticeable limp and was very unstable when he walked, which was or should have been noticed by the CCS nurse on July 1. And if CCS was the exclusive decision-maker, it was CCS who directed that Gonzalez be given a low bunk/low tier placement on June 12 because of his multiple sclerosis. Viewing this evidence in the light most favorable to Gonzalez, CCS knew or should have known that Gonzalez should have been housed on the lower tier for his safety upon his July 1 admission.

In addition, Gonzalez claimed that he sent two kites to "medical" stating that he was not supposed to be on the second floor because he had multiple sclerosis. Presumably, "medical" referred to CCS, the County's medical contractor. Gonzalez claims that these medical kites were ignored. Viewing this evidence in the light most favorable to Gonzalez, these kites should have put CCS on notice that Gonzalez should have been moved to the first tier for his safety.

The County argues that CCS's actions cannot impose liability on the County for three reasons. First, the County claims that Gonzalez was required to produce expert medical

11

testimony to establish the standard of care regarding CCS because Gonzalez's cause of action is a medical negligence claim rather than ordinary negligence claim. It asserts that the cause of action is a medical negligence claim because CCS makes housing decisions based on a professional medical evaluation.

The County emphasizes that chapter 7.70 RCW governs all civil actions for "injury occurring as a result of health care." RCW 7.70.010. Under RCW 7.70.040, a plaintiff in a claim against a health care provider must prove "(1) that the defendant health care provider failed to exercise the standard of care of a reasonably prudent health care provider in that same profession and (2) that such failure was a proximate cause of the plaintiff's injuries." *Frausto v. Yakima HMA, LLC*, 188 Wn.2d 227, 231, 393 P.3d 776 (2017). And expert testimony generally is required to establish the standard of care. *Id.* at 231-32.

Chapter 7.70 RCW does not define the term "health care," but courts have defined the term as " 'the process in which [the physician] was utilizing the skills which he had been taught in examining, diagnosing, treating or caring for the plaintiff as his patient.' " *Beggs v. Dept. of Soc. & Health Servs.*, 171 Wn.2d 69, 79, 247 P.3d 421 (2011) (alteration in original) (internal quotation marks omitted) (quoting *Estate of Sly v. Linville*, 75 Wn. App. 431, 439, 878 P.2d 1241 (1994)).

Under this definition, Gonzalez's injury was not a result of CCS's "health care." CCS's nurse merely noted Gonzalez's chronic multiple sclerosis and made a placement decision. She did not examine, diagnose, treat or care for him. And Gonzalez certainly was not her "patient." Instead of providing health care, CCS was deciding where to house Gonzalez. The fact that Gonzalez had a chronic medical condition did not transform that operational decision into a

medical decision. Instead, Gonzalez's medical condition was a factor that CCS had to take into consideration to ensure his safety.

Further, CCS was acting as the County's agent in discharging *the County's* nondelegable duty to ensure Gonzalez's safety. And the County's standard of conduct is measured against the professional standard of conduct for jailers, not for health care providers. Therefore, no expert testimony was required to establish CCS's breach of duty. *See Petersen v. State*, 100 Wn.2d 421, 437, 671 P.2d 230 (1983) (stating that expert testimony generally is not required to establish a standard of care in a negligence action).

Second, the County argues that there is no genuine issue of material fact regarding breach of duty because CCS was an independent contractor and therefore the County cannot be held liable for CCS's actions. But as stated above, the County's duty to ensure the health of a prisoner was nondelegable and therefore the County remains liable for CCS's negligence even if CCS was an independent contractor. *Gregoire*, 170 Wn.2d at 635; *Knutson*, 1 Wn. App. 2d at 547.

Third, the County argues Gonzalez is barred by collateral estoppel from imposing liability on the County based on CCS's conduct because the trial court dismissed all claims against CCS. The County points out that a principal cannot have vicarious liability if the agent is not liable.

However, the trial court initially denied CCS's summary judgment motion regarding negligence at the same time it denied the County's motion. The court later dismissed all claims against CCS under CR 12(b)(6). The County has not provided an adequate record for us to determine why the trial court denied CCS's summary judgment motion but then dismissed all claims against CCS under CR 12(b)(6). It is possible that the trial court determined that

dismissal was appropriate because Gonzalez's amended complaint asserted a general negligence claim against only the County, not against CCS. And presumably the trial court determined that the multiple claims actually asserted against CCS had no merit for reasons the record does not show.

We conclude that a genuine issue of material fact exists as to whether CCS breached its duty to ensure Gonzalez's safety, thereby imposing liability on the County because of its nondelegable duty.

### 5. Summary

Questions of fact exist as to whether the County directly breached its duty to ensure Gonzalez's safety and whether CCS breached that delegated duty and thereby subjected the County to vicarious liability. Therefore, we hold that the trial court did not err in denying the County's motion for summary judgment for the County on the issue of breach of duty.

## C. PROXIMATE CAUSE

The County argues that even if questions of fact exist regarding breach of duty, Gonzalez produced no evidence to show that his housing placement or his multiple sclerosis caused his fall. We disagree.

### 1. Legal Principles

Proximate cause is an essential element of negligence liability. *Ehrhart v. King County*, 195 Wn.2d 388, 396, 460 P.3d 612 (2020). Proximate cause generally is a question of fact, although causation may be determined as a matter of law if reasonable minds could not differ. *Meyers v. Ferndale School Dist.*, 197 Wn.2d 281, 289, 481 P.3d 1084 (2021). The two aspects of proximate cause are cause in fact and legal cause. *Id.* "Cause in fact refers to the physical connection between an act and an injury – whether, but for the act, the injury would not have

occurred." *Collins v. Juergens Chiropractic, PLLC*, 13 Wn. App. 2d 782, 794, 467 P.3d 126, *review denied,* 196 Wn.2d 1027 (2020).  Legal cause addresses how far to extend the consequences of a defendant's acts as a matter of policy.  *Id.*

        2.    Analysis

The available jail records and Gonzalez's declaration show that Gonzalez relied on more than just speculation to show that but for the County's decision to house him on the second tier, he would not have tripped and fallen while taking his tray downstairs after breakfast.  Gonzalez stated that he walked with a noticeable limp to the point where people believed that he was intoxicated in public and that it was extremely obvious that he had a difficult time using the stairs.  In addition, inmates only had access to food on the lower tier, which required anyone who was not housed on the lower tier to use the stairs to pick up a meal tray and return the tray after eating.  This required Gonzalez to go up and down the stairs several times a day while also holding a tray in his hands.

Further, the County noted on the June 12 information report that Gonzalez needed to be housed on the lower tier with a low bunk specifically because of his multiple sclerosis.  This suggests that the County previously identified stairs as an unavoidable hazard given the fact that inmates could only pick up and return meal trays on the lower tier.  And during his second incarceration, Gonzalez made a complaint to a correctional officer and sent two kites to medical regarding his housing placement.  Accordingly, a jury could conclude that the County's housing decision forced Gonzalez to repeatedly use the stairs and more probably than not caused him to fall due to the weakness in his legs from his multiple sclerosis.

The County makes two proximate cause arguments.  First, the County again argues that Gonzalez's cause of action is a medical negligence claim and that he failed to provide the

15

required expert testimony to show proximate cause. We reject this argument for the same reasons stated above regarding breach of duty.

Second, the County argues that Gonzalez failed to specify in his declaration that his multiple sclerosis caused him to fall on the stairs rather than simply tripping, thereby requiring a trier of fact to speculate as to why he fell. The County relies on cases holding that without evidence to explain how an accident occurred, a plaintiff cannot establish proximate cause and therefore cannot avoid summary judgment. *E.g.*, *Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 377-78, 972 P.2d 475 (1999).

But Gonzalez did not need to state specifically that his multiple sclerosis caused him to fall down the stairs because we can infer that fact based on the evidence. Gonzalez stated that the multiple sclerosis caused him to walk with a limp and made him very unstable. He stated that it was very difficult for him to walk the stairs when he was housed on the second floor, and that he struggled every day to walk up and down the stairs for meals. Again, we must view all reasonable inferences from the evidence in the light most favorable to Gonzalez. *Sartin*, 15 Wn. App. 2d at 172. A reasonable inference is that he tripped on the stairs because of his difficulty going up and down the stairs due to his multiple sclerosis. And he was forced to walk down the stairs with his food tray because the County and CCS breached their duty by housing him in the second tier.

We conclude that a genuine issue of material fact exists as to whether the County's and/or CCS's alleged breach of duty was a proximate cause of Gonzalez's injury. Therefore, we hold that the trial court did not err in denying the County's summary judgment motion on the issue of proximate cause.

CONCLUSION

We affirm the trial court's order denying the County's summary judgment motion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
WORSWICK, P.J.

_____
LEE, J.