[No. 40256-1-I. Division One. April 5, 1999.]

WADE BRANOM, ET AL., *Appellants*, v. THE STATE OF
WASHINGTON, ET AL., *Respondents*.

*James L. Holman*, for appellants.

*Heller Ehrman White & McAuliffe*, by *Patricia H. Wagner*, *Kristin A. Henderson*, and *Robin E. Wechkin*; and *Williams Kastner & Gibbs*, by *Mary H. Spillane*, for respondents.

Cox, J. — We must decide if the parents of a severely neurologically impaired infant have a cause of action for lack of informed consent, in their own right, against their son's neonatologist. The doctor successfully performed surgery on the infant for an intestinal blockage that was unrelated to a severe neurological condition. The parents claim that the doctor failed to disclose to them either the existence of the neurological condition or its bleak prognosis when he sought their consent to the surgery for the blocked intestine. They also claim that the doctor failed to disclose to them that it would have been permissible for them to withhold surgery and authorize only palliative treatment until their son died. Because there was no breach of any duty by the doctor to the parents in their own right, we affirm the summary dismissal of their claims.

In the early morning hours of January 25, 1993, William "Mac" Branom was born prematurely to Karen and Wade Branom at Northwest Hospital in Seattle. The hospital staff diagnosed that he had two serious and distinct problems: a bowel obstruction and an abnormally small head. This latter condition is medically described as "microcephaly" and indicates probable mental defects. Within four hours of his birth, Mac was transferred to Children's Hospital and Medical Center for treatment of the bowel obstruction.

On admission to Children's Hospital, Dr. William Truog, a neonatologist, examined Mac. He confirmed that the earlier diagnosis was correct. Following the examination, Dr. Truog met with Wade Branom. He recommended immediate surgery to correct Mac's intestinal obstruction.

This recommendation was based, in part, on Dr. Truog's belief that the blockage was life-threatening and that a perforated bowel could cause a severely painful death.

The parties dispute whether Dr. Truog also informed Wade Branom of Mac's microcephaly either during this meeting or at any time prior to surgery. Wade Branom asserts that Dr. Truog did not discuss Mac's neurological problems until after the surgery for the bowel obstruction was successfully completed. Dr. Truog insists he did inform Wade Branom of both the bowel obstruction and the microcephaly during their initial discussion.

Following the discussion with Dr. Truog, Wade Branom returned to Northwest Hospital to discuss the situation with his wife, Karen Branom, who was recuperating from Mac's birth early that day. While the Branoms were still there, Children's Hospital called them to obtain consent for the intestinal surgery. They gave consent, and the operation was successfully performed later that day. About two weeks later, Children's Hospital discharged Mac from the hospital.

Mac lived at home until November 1993. At that time, Mac lost his ability to swallow and was no longer able to feed from a regular baby bottle. The Branoms tried to continue to care for him at home, but they eventually decided to place Mac in foster care. In August 1994, they removed him from foster care and placed him in a home for disabled children. He lived there until his death from natural causes in April 1995, 27 months after his birth.

Thereafter, the Branoms commenced this action against Dr. Truog, Children's Hospital, and others, stating various claims on their own behalf as well as on behalf of their daughter, Lauren, and on behalf of Mac's estate. They sought damages for their own emotional distress and for the extraordinary expenses of caring for Mac for the period following the surgery until his death. Several of these claims were later dismissed by agreement of the parties. The trial court then granted the defendants' motions for summary judgment, dismissing all remaining claims against Dr. Truog and Children's Hospital.

The Branoms appeal. They seek review only of their individual claims of medical malpractice and alleged negligent infliction of emotional distress. They request reimbursement of postoperative expenses that were incurred for Mac's care between the surgery and his death. They conceded at oral argument that Mac's estate's claims are not before us.

## I. Injury Resulting from Health Care

■ We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[1] All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party.[2] We review questions of law de novo.[3]

■ The crucial question that we must address is whether Dr. Truog owed the Branoms a duty. The existence of a duty is a question of law.[4]

■ In enacting RCW 7.70, the Legislature modified the substantive aspects of all causes of action, regardless of their characterization, for damages for "injury occurring as a result of health care." The Legislature's declaration of policy is set forth in RCW 7.70.010, which provides in relevant part:

> The state of Washington, exercising its police and sovereign power, hereby modifies as set forth in this chapter and in RCW 4.16.350 . . . certain substantive and procedural aspects of *all* civil actions and causes of action, whether based on tort,

[1]CR 56(c); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991).

[2]*Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[3]*Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

[4]*Zenkina v. Sisters of Providence in Wash., Inc.*, 83 Wn. App. 556, 560, 922 P.2d 171 (1996), *review denied*, 131 Wn.2d 1003 (1997).

contract, or otherwise, for damages for injury occurring as a result of health care . . . .[5]

This section sweeps broadly. It clearly states that RCW 7.70 modifies procedural and substantive aspects of *all* civil actions for damages for injury occurring as a result of health care, regardless of how the action is characterized.

 The Legislature also specifically defined the three bases on which a plaintiff could recover damages for injury occurring as a result of health care:

No award shall be made in *any* action or arbitration for damages for injury occurring as the result of health care . . . unless the plaintiff establishes one or more of the following propositions:

(1) That injury resulted from the failure of a health care provider to follow the accepted standard of care;

(2) That a health care provider promised the patient or his representative that the injury suffered would not occur;

(3) That injury resulted from health care to which the patient or his representative did not consent.[6]

Reading RCW 7.70.010 and .030 together, we conclude that whenever an injury occurs as a result of health care, the action for damages for that injury is governed exclusively by RCW 7.70. We also conclude that the specific question of whether the injury is actionable is governed by RCW 7.70.030.

We next consider the scope of the phrase "health care," as it is used in these sections. The phrase is undefined by the statute. But we have previously construed it to mean "the process in which [a physician is] utilizing the skills which he had been taught in examining, diagnosing, treat-

---

[5](Emphasis added.)

[6]RCW 7.70.030.

ing or caring for the plaintiff as his patient."[7] This defini-tion is consistent with the dictionary definition of health care: "The prevention, treatment, management of illness and the preservation of mental and physical well-being through the services offered by the medical and allied health professions."[8]

The term "health care," then, presumably encompasses the medical advice regarding the diagnosis and recom-mended course of treatment for Mac's bowel obstruction. But the scope of the phrase is sufficiently broad to encompass the diagnosis and medical advice (or lack thereof) for the microcephaly.

The Branoms contend that their injury did not occur as the result of "health care" and that, therefore, the informed consent statute does not apply to their claim. Relying on *Estate of Sly v. Linville*,[9] they assert that Dr. Truog did not treat them. Thus, they contend that their injuries necessarily did not result from health care.

In *Sly*, Dr. Linville had misrepresented to Sly the nature and extent of another physician's negligence in treating him. Because of those misrepresentations, Sly failed to bring a timely suit against that doctor. Unable to recover from the negligent physician, Sly sued Dr. Linville for mis-representation. Dr. Linville argued that Sly's lawsuit against him was time-barred under the statute of limita-tions governing civil actions "for damages for injury occur-ring as a result of health care."[10] The court, however, held that because Sly's injury did not result from "health care," his claim was not governed by that statute of limitations.

█ Unlike *Sly*, however, the Branoms' claims result from "health care." Their injuries arose during the process in which Dr. Truog "was utilizing the skills which he had

---

[7]*Estate of Sly v. Linville*, 75 Wn. App. 431, 439, 878 P.2d 1241 (1994) (quoting *Tighe v. Ginsberg*, 146 A.D.2d 268, 271, 540 N.Y.S.2d 99 (1989)).

[8]AMERICAN HERITAGE DICTIONARY 833 (3d ed. 1992).

[9]75 Wn. App. 431.

[10]*Estate of Sly v. Linville*, 75 Wn. App. 431, 437, 878 P.2d 1241 (1994) (quoting RCW 4.16.350(3)) (emphasis omitted).

been taught in examining, diagnosing, treating or caring for" Mac.[11] This situation falls squarely within the statutory framework of RCW 7.70, which governs civil actions for injuries resulting from health care.

Thus, we conclude that the Branoms' claims occur as a result of health care. To be cognizable, the claims must fit within one or more of the three prongs of RCW 7.70.030.

 Medical negligence[12] and lack of informed consent[13] are the only potential bases for the causes of action at issue in this case. There is no contention here that Dr. Truog or the hospital made any promises that the alleged injury would not occur.[14] For cases arising under the medical negligence prong, the plaintiff need not be a patient.[15] But for the informed consent cause of action, the plaintiff, or injured person, must be a patient.[16]

Here, the Branoms presented only evidence of a lack of informed consent in opposition to the summary judgment motion. Dr. Richard P. Knudson, one of the Branoms' expert witnesses, testified that Dr. Truog should have conducted more tests and obtained more studies before performing the bowel surgery on Mac. But when asked whether the failure to do more testing fell below the standard of care, Dr. Knudson testified that "it was below the standard of care *not to inform the parents* that it was an option to obtain those studies prior to surgery."[17] Because this testimony relates only to lack of informed consent, we do not have before us any genuine issue of material fact

---

[11]*Sly*, 75 Wn. App. at 439 (quoting *Tighe*, 146 A.D.2d at 271).

[12]RCW 7.70.030(1).

[13]RCW 7.70.030(3).

[14]RCW 7.70.030(2).

[15]RCW 7.70.040; *Daly v. United States*, 946 F.2d 1467, 1469 (9th Cir. 1991) (discussing RCW 7.70.040-.050).

[16]RCW 7.70.030(3), .050; *Daly*, 946 F.2d at 1469.

[17](Emphasis added.)

regarding medical negligence.[18] Rather, the question is whether there is any genuine issue of material fact with respect to the distinct cause of action for lack of informed consent.[19]

There is disputed testimony as to whether Dr. Truog informed the Branoms of Mac's microcephaly prior to the operation for the bowel obstruction. For purposes of the motion, we assume that the Branoms' version of events is correct.[20] Thus, the question is whether this genuine issue of fact is material.[21]

According to the Branoms, they would not have consented to the surgery to correct Mac's bowel obstruction if Dr. Truog had told them that Mac's neurological problems would likely leave him severely disabled. Instead, they would have withheld fluids and nutrition, providing only palliative care. They would have done this with the understanding that Mac would likely die from either a perforated bowel or from dehydration. On these assumed facts, did Dr. Truog owe the parents a duty to obtain informed consent as parents and not as Mac's representatives?

In *Crawford v. Wojnas*,[22] this court considered whether the duty of informed consent runs to parents other than as representatives of their children. There, a mother

---

[18]RCW 7.70.040 provides:

"The following shall be necessary elements of proof that injury resulted from the failure of the health care provider to follow the accepted standard of care:

"(1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances;

"(2) Such failure was a proximate cause of the injury complained of."

[19]*See Gustav v. Seattle Urological Assocs.*, 90 Wn. App. 785, 789, 954 P.2d 319 (stating that negligence and informed consent are "two distinct causes of action"), *review denied*, 136 Wn.2d 1023 (1998).

[20]*Mountain Park Homeowners Ass'n*, 125 Wn.2d at 341.

[21]CR 56(c); *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 911 P.2d 1319 (1996) (stating that a material fact is one on which the outcome of a case depends).

[22]51 Wn. App. 781, 784, 754 P.2d 1302, *review denied*, 111 Wn.2d 1027 (1988).

permitted a physician to administer a live polio vaccine to her infant. Although the infant was unharmed, the mother was infected and paralyzed by the virus. The mother sued, claiming the physician breached his duty to secure informed consent by failing to inform her of a risk-free alternative to the live vaccine administered to her child.

The *Crawford* court affirmed the defense verdict. It reasoned that a doctor's liability for failure to obtain informed consent "is founded, not on violation of a standard of care among the medical community, but on failure to disclose material information to a patient."[23] The court explained that "[b]ecause the duty is patient oriented, the doctor should not be liable for failure to disclose risks and alternatives to *third parties*."[24]

Under *Crawford*, the parents of a patient are third parties to whom no duty of informed consent is owed. It is only when parents act in a representative capacity on their child's behalf that a doctor owes them a duty to obtain informed consent. Here, the Branoms have failed to present us with any controlling authority, and we have found none, to support their argument that Dr. Truog may be liable for failing to obtain informed consent from them as Mac's parents and not in their representative capacity on Mac's behalf.

The Branoms nonetheless urge us to recognize that the duty of informed consent runs to the *parents* of infants, not just to the *representatives* of infant patients. Using common law tort principles, they argue that Dr. Truog's nondisclosure resulted in their foreseeable injury and that the utility of nondisclosure does not outweigh the risk of such injury: "Inasmuch as neonatologists already are obligated to tell parents of their patients what Dr. Truog allegedly did not tell the parents in this case, there is no 'utility' in relieving Dr. Truog of a duty to the parents, let alone

[23]*Crawford*, 51 Wn. App. at 783 (citing *Smith v. Shannon*, 100 Wn.2d 26, 30, 666 P.2d 351 (1983); *Miller v. Kennedy*, 11 Wn. App. 272, 285-86, 522 P.2d 852 (1974), *aff'd per curiam*, 85 Wn.2d 151, 530 P.2d 334 (1975)).

[24]*Crawford*, 51 Wn. App. at 783.

any utility that outweighs the risk needlessly created by nondisclosure."[25]

But even if foreseeability were sufficient to establish a duty, a proposition that Dr. Truog contests,[26] the Branoms would still state no claim of lack of informed consent. The governing statute expressly requires that the person suffering injury be the patient.[27] The Branoms claim injury to themselves, and no claim on behalf of the patient (Mac) is before us.

■ The Branoms also assert that the stipulation below that it would have been legally and ethically permissible to withhold treatment from Mac somehow gives them a cause of action against Dr. Truog for depriving them of the opportunity to make that choice. But the statutory framework of RCW 7.70 does not exempt from its applicability situations where such a stipulation exists. We decline to rewrite the statute to add such an exception.[28]

## II. Other Claims
### A. Medical Negligence

The Branoms argue that Dr. Truog breached the applicable standard of care, giving rise to a medical negligence claim. We disagree.

The Branoms offered no expert testimony regarding the standard of care under 7.70.030(1). Rather, the testimony offered related solely to the fact that it fell below the standard of care to not inform the Branoms of their option to seek further consultations or studies before consenting to Mac's surgery. This testimony addresses the distinct claim

---

[25]Br. of Appellant at 14-15.

[26]Br. of Resp't at 45. Dr. Truog cites *Petersen v. State*, 100 Wn.2d 421, 425-26, 671 P.2d 230 (1983) for the proposition that a claim of negligence requires the existence of a legal duty, and *Hunsley v. Giard*, 87 Wn.2d 424, 434-36, 553 P.2d 1096 (1976) for the proposition that foreseeability alone does not dictate the scope of a duty.

[27]RCW 7.70.050(1)(d).

[28]*In re Custody of Smith*, 137 Wn.2d 1, 13, 969 P.2d 21 (1998).

under RCW 7.70.030(3), lack of informed consent. It does not address malpractice.

We reject the Branoms' apparent assertion that they created a genuine issue of material fact for medical negligence.

## B. Negligent Infliction of Emotional Distress

The Branoms allege that Dr. Truog's failure to fully inform them of Mac's prognosis before recommending the bowel surgery constitutes negligent infliction of emotional distress. We disagree.

This injury occurred as the result of health care and therefore can be brought under only one of the three causes of action defined in RCW 7.70.030. Negligent infliction of emotional distress is not one of these authorized claims. Additionally, the allegation is solely limited to a lack of informed consent under 7.70.030(3). As previously discussed, that distinct claim is available only to the patient.

Additionally, the facts alleged do not support this claim. The class of persons entitled to recover under negligent infliction of emotional distress is limited to those "plaintiffs who are actually placed in peril by the defendant's negligent conduct and to family members present at the time who fear for the one imperiled."[29] There is no doubt that the Branoms suffered extreme emotional distress because of Mac's illness, neurological defects, and eventual death. However, they do not allege that they were placed in peril by Dr. Truog's failure to inform them of Mac's neurological problems at the same time he informed them of the obstructed bowel.

## C. Fiduciary-Type Duty

Washington recognizes that the physician-patient relationship is a fiduciary one.[30] The Branoms argue that Dr. Truog had a "fiduciary-type" duty not to infringe on

[29]*Waller v. State*, 64 Wn. App. 318, 337, 824 P.2d 1225 (quoting *Cunningham v. Lockard*, 48 Wn. App. 38, 45, 736 P.2d 305 (1987) (delineating limitations on the class of persons who may recover under this cause of action originally recognized in *Hunsley*)), *review denied*, 119 Wn.2d 1014 (1992).

[30]*See Carson v. Fine*, 123 Wn.2d 206, 867 P.2d 610 (1994).

their right as parents to decide what treatment, if any, was in Mac's best interest. They claim that by failing to tell them of their option to withhold treatment from Mac, Dr. Truog breached this duty. Because the Branoms fail to cite to any legal authority to support their argument, we decline to address it.[31]

The claims against Children's Hospital have no independent grounds from those asserted against Dr. Truog. Because we hold that the Branoms' claims against Dr. Truog are barred, we likewise hold that the Branoms have no claim against Children's Hospital.

Dr. Truog and Children's Hospital also assert that the Branoms' claims are, in essence, claims for wrongful prolongation of life.[32] Given our disposition of the case on other grounds, we need not reach this argument.

We affirm the trial court's summary judgment order.

KENNEDY, C.J., and ELLINGTON, J., concur.

Review denied at 138 Wn.2d 1023 (1999).

---

[31]RAP 10.3(a)(5); *McKee v. American Home Prods., Corp.*, 113 Wn.2d 701, 705, 782 P.2d 1045 (1989); *City of Bremerton v. Shreeve*, 55 Wn. App. 334, 338, 777 P.2d 568 (1989).

[32]*See Benoy v. Simons*, 66 Wn. App. 56, 831 P.2d 167 (the court declined to adopt a new cause of action for wrongful prolongation of life), *review denied*, 120 Wn.2d 1014 (1992).