[No. 17180-9-III.    Division Three.    October 26, 1999.]

NGHIA NGUYEN, ET AL., *Appellants*, v. SACRED HEART
MEDICAL CENTER, ET AL., *Respondents*.

*Kenneth K. Watts*, for appellants.

*Dennis L. Fluegge* and *Jerome R. Aiken* of *Meyer, Fluegge & Tenney*; *Michael J. Myers* and *Keith D. Brown* of *Randall & Danskin, P.S.*; and *Brian T. Rekofke* of *Witherspoon, Kelley, Davenport & Toole, P.S.*, for respondents.

BROWN, J. — Ryan Nguyen was born to Nghia Nguyen and Darla Nguyen at Sacred Heart Medical Center (SHMC) in Spokane. Tragically, Ryan suffered severe congenital abnormalities. The Nguyens disagreement with Ryan's medical care providers eventually led to a court order restoring dialysis treatment. They eventually sued SHMC, SHMC's ethicist, and the treating physicians under various state torts and federal statutory bases, but not specifically outrage. The trial court granted summary judgment to all defendants on all theories presented by the Nguyens after the Nguyens' trial counsel limited the liability theories by concessions. The Nguyens argue the concessions should not bind them, an outrage theory was not precluded by the

summary judgment, and alternatively outrage may be raised for the first time on appeal. We reject these arguments and affirm.

## FACTS

Mr. and Ms. Nguyen's son, Ryan, was born prematurely at SHMC on October 27, 1994. During Ms. Nguyen's pregnancy, doctors predicted Ryan would have congenital problems. After an emergency cesarean section, Ryan was resuscitated. Ryan's medical problems included a bowel obstruction, significant brain damage, and major loss of kidney function.

Ryan began receiving peritoneal dialysis for his kidney failure two days after he was born. Dialysis precluded operative treatment for his bowel problems. On November 5, he was taken off dialysis. On November 8 dialysis was resumed until November 11. Ryan's nephrologist, Dr. Robert G. Benedetti, told Ryan's father that Ryan was not a candidate for continued dialysis due to his neurological status and limited kidney function. On November 11, Dr. Benedetti noted that Ryan was "neurologically more appropriate according to nurse" and neonatologist, Dr. Hrair A. Garabedian, noted Ryan's neurological status was improving.

A Seattle hospital that provides chronic infant dialysis refused Ryan admission due to his grave medical conditions. On November 17, Ryan's treating physicians, SHMC's ethicist, Johnny Cox, and Ryan's parents held a care conference to discuss Ryan's status. The conference concluded with Mr. Nguyen requesting Ryan's transfer to an Oregon hospital. The Oregon hospital refused for similar reasons as the Seattle hospital. At this point, Ryan's treating physician noted there were "absolutely no medical alternatives."

On November 22, the Nguyens obtained a court order directing dialysis. Ryan had been off dialysis for 11 days; the events of these 11 days are the focus of this litigation.

The Nguyens claim SHMC stopped giving Ryan nutrition without their consent and responded to his alarms differently than other babies. On December 13, Ryan was transferred to a different Oregon hospital than the first consulted. The Nguyens filed claims for themselves and Ryan alleging various medical negligence theories, including informed consent and federal statutory violations.

During the summary judgment hearing, the Nguyens' attorney conceded:

1. The informed consent claim should be dismissed.

2. No claim existed for negligent prenatal care or labor and delivery care.

3. No defendant caused Ryan's congenital problems.

4. Damage was limited to a loss of a chance of recovery theory.

Neither the Nguyens' original complaint nor their amended complaint specifically included an outrage claim. Outrage was not mentioned during the discovery, briefing, or summary judgment hearing. The parties agreed no material facts remained in dispute on the remaining theories of recovery; the trial court so concluded. The complaint was dismissed. The Nguyens unsuccessfully requested reconsideration after alleging newly discovered evidence. The trial court rejected additional testimony from Ryan's treating physician in Oregon who had previously been deposed. Previously the doctor had refused to render an opinion on the critical subject brought before the court on reconsideration. Outrage was again unmentioned. The Nguyens filed this appeal.

## ANALYSIS
### A. Outrage Claim

The issue is whether the trial court erred by dismissing the Nguyens' complaint on summary judgment after concluding no material facts existed bearing on the liability theories remaining after accepting the Nguyens' conces-

sions. The Nguyens contend an outrage claim survived the summary judgment. They focus on the trial court's failure to "find that the facts alleged in [the] Nguyens' complaint can be construed as raising a claim for relief based on the tort of outrage . . . ." Appellant's Br. at 25. They argue: "Informed Consent Claim Is Really [a] Tort of Outrage Claim." Appellant's Br. at 33. Alternatively, the Nguyens argue an outrage claim may be raised for the first time on appeal. The Nguyens concede they did not specifically argue or brief an outrage theory in the trial court.

■ The informed consent elements a patient must prove against a health care provider are: (1) failure to inform the patient of a material fact or facts relating to the treatment; (2) consent to the treatment without being aware of or fully informed of the material fact or facts; (3) a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such fact or facts; (4) the treatment in question proximately caused injury to the patient. RCW 7.70.050(1). In contrast, "to establish a tort of outrage claim a plaintiff must show (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff." *Reid v. Pierce County*, 136 Wn.2d 195, 202, 961 P.2d 333 (1998) (citations omitted).

Clearly these two causes of action comprise different elements. We cannot say that one encompasses the other directly or implicitly. Furthermore, the Nguyens' trial counsel conceded at summary judgment that the informed consent claim should be dismissed. In part B. of our discussion, we discuss the concession adversely to the Nguyens.

■ Additionally, at argument appellant's counsel was correctly concerned that a recent case had dealt a "knockout punch" to his argument that the informed consent claim was in reality an outrage claim. *Branom v. State*, 94 Wn. App. 964, 974 P.2d 335 (1999). The *Branom* court decided that the parents of a medically impaired infant do not have a cause of action in their own right, apart from

their representative capacity, under an informed consent theory based upon the medical negligence theories available under RCW 7.70. *Branom*, 94 Wn. App. at 971-74. Essentially, under *Branom* the health care providers were found to owe no duty to the infant's parents. Similarly, Sacred Heart's appellate counsel at argument aptly reasoned that when no breach of a duty of care to Ryan is claimed it would seem to follow that no independent tort duty to the parents could arise. Accordingly, under either our reasoning or that of *Branom*, we conclude the Nguyens' contentions are without merit. We now turn to whether the tort of outrage can be raised for the first time on appeal.

■ ■ Generally, appellate courts will limit review to claims argued before the trial court. RAP 2.5(a). This is especially true for summary judgment proceedings. RAP 9.12. Appellate courts review summary judgment orders de novo, performing the same inquiry as the trial court. *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993). However, our Supreme Court has carved out an exception. In *Kruse*, the court held that a reviewing court may perform all acts necessary or appropriate to secure fair and orderly review and can waive our appellate rules when necessary to serve the ends of justice. RAP 1.2(c); RAP 7.3; *Kruse*, 121 Wn.2d at 721.

■ The Nguyens argue it would serve the ends of justice to review their claim because their child's life was at stake. However, the Nguyens' claim is actually focused on their own emotional distress, not Ryan's suffering or outrage. Sadly, it was noted at argument that Ryan is now deceased. The Nguyens also claim their right to maintain an action will be lost if this court does not accept review because the statute of limitations prevents them from presenting the outrage claim to the trial court. Courts may recognize an exception to the rule of nonreviewability when the question affects the right to maintain an action. *Bennett v. Hardy*, 113 Wn.2d 912, 918, 784 P.2d 1258 (1990). In essence the Nguyens wish to establish a new claim against

the health care providers and have it relate back to their first complaint. Washington generally does not permit splitting a claim or cause of action. *See Landry v. Luscher,* 95 Wn. App. 779, 780-81, 976 P.2d 1274 (1999).

A possible oversight does not amount to denial of a right to maintain an action or override claim splitting principles. Moreover, allowing a party to shift theories on appeal runs contrary to the purpose of summary judgment; to prevent useless trials based upon the specific issues joined for trial. Additionally, to allow a new theory at this point would subvert the principles underlying finality and offend concepts that promote disclosure during the discovery process. Importantly, the parties agreed at summary judgment that no material facts remain outstanding. Allowing injection of a new cause of action under the doubtful theory that outrage is included within informed consent would be to allow a hindsight approach to summary judgment proceedings. The Nguyens' suggestion is inconsistent with the pleadings, discovery, briefing, argument, and concessions before the trial court. We conclude the outrage claim was not before the court and should not be allowed as an afterthought to the fully developed proceedings below. The trial court did not err.

## B. Concessions

The issue is whether the trial court erred by accepting the Nguyens' concession through their trial counsel that their claims were limited to " 'A' a worsening of a birth condition, or 'B', loss of a chance at a better outcome." *See* Report of Proceedings at 3. The Nguyens argue their trial counsel lacked authority to make this stipulation.

■ CR 2A and RCW 2.44.010 grant an attorney authority to bind his client to agreements or stipulations made on behalf of the client but without the client's written agreement or presence in court. *State ex rel. Turner v. Briggs*, 94 Wn. App. 299, 303, 971 P.2d 581 (1999). CR 2A provides:

No agreement or consent between parties or attorneys in

respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

Similarly, RCW 2.44.010 provides:

An attorney and counselor has authority:

(1) To bind his client in any of the proceedings in an action or special proceeding by his agreement duly made, or entered upon the minutes of the court; but the court shall disregard all agreements and stipulations in relation to the conduct of, or any of the proceedings in, an action or special proceeding unless such agreement or stipulation be made in open court, or in presence of the clerk, and entered in the minutes by him, or signed by the party against whom the same is alleged, or his attorney[.]

However, " '[i]t will be readily admitted that an attorney without special authority has no right to stipulate away a valuable right of his client.' " *Graves v. P.J. Taggares Co.*, 94 Wn.2d 298, 303, 616 P.2d 1223 (1980) (quoting *Wagner v. Peshastin Lumber Co.*, 149 Wash. 328, 337, 270 P.2d 1032 (1928)).

Courts encourage litigants to settle their differences at any stage of the proceedings. *Kirk v. Moe*, 114 Wn.2d 550, 554-55, 789 P.2d 84 (1990). An agreement arrived at on the record is binding on the parties and will not be reviewed on appeal unless the party contesting it can show that the concession was a product of fraud or that the attorney over-reached his authority. *Snyder v. Tompkins*, 20 Wn. App. 167, 173, 579 P.2d 994, *review denied*, 91 Wn.2d 1001 (1978).

Here, the Nguyens fail to meet this burden. They argue their absence from the summary judgment hearing shows their objection. However, this fact alone is not sufficient as CR 2A and RCW 2.44.010 clearly allow an attorney to make concessions without the client's presence. The record is

devoid of any other evidence that shows the Nguyens' trial counsel overreached his authority. Again, this issue is raised for the first time on appeal. Again, in essence the Nguyens urge us to allow prohibited claim splitting. Moreover, although an appellate court is not bound by an erroneous concession, it has not been shown that the concession was erroneous. *See State v. Knighten*, 109 Wn.2d 896, 901-02, 748 P.2d 1118 (1988). Accordingly, the concession was properly before the trial court. The trial court did not err accepting the concession.

## CONCLUSION

The trial court did not err when it dismissed the Nguyens' complaint on summary judgment. No independent outrage claim could reasonably be construed within the Nguyens' complaint. Even if such a cause of action were within the complaint, their trial counsel's concession was effective to eliminate it from the court's consideration. We reject a rule that would always subsume an outrage claim within a claim of informed consent. The Nguyens may not raise their outrage claim for the first time on appeal. Last, the trial court did not err by accepting the Nguyens' concession limiting the claims at summary judgment.

Affirmed.

SWEENEY and KATO, JJ., concur.