IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ALICE L. FRITZ, an individual, | ) | No. 36420-8-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROCKWOOD CLINIC, P.S., a | ) | |
| Washington Corporation, | ) | UNPUBLISHED OPINION |
| | ) | |
| Defendant, | ) | |
| | ) | |
| CHRIST CLINIC/CHRIST KITCHEN, a | ) | |
| Washington Corporation; and DANIELLE | ) | |
| V. RIGGS, ARNP, an individual, | ) | |
| | ) | |
| Respondents. | ) | |

FEARING, J. — The superior court dismissed, on summary judgment, Alice

Fritz's cause of action for lack of informed consent. Because Fritz's cause of action

arises from an alleged misdiagnosis, we affirm the dismissal based on the *Backlund* rule.

*Backlund v. University of Washington*, 137 Wn.2d 651, 975 P.2d 950 (1999).

FACTS

Plaintiff Alice Fritz received medical care from defendant Christ Clinic/Christ

Kitchen (Christ Clinic) in 2007 through 2014. By 2007, Fritz suffered from depression,

hepatitis C, hypertension, and Type II diabetes.

Alice Fritz first visited Christ Clinic on December 12, 2007. Dr. Svetlana Cox, a clinic employee, then ordered a blood draw to determine, among other things, Fritz's thyroid function. Five days later, on December 17, the laboratory delivered five pages of blood test results to Christ Clinic. According to an electronic signature, defendant Danielle Riggs, ARNP, another clinic employee, received the results. Fritz's test results revealed an elevated thyroid stimulating hormone (TSH) level. The high level indicates the likelihood of an underactive thyroid gland. The trial court record does not indicate whether Danielle Riggs or any other employee of Christ Clinic recognized the higher TSH level or informed Fritz of the abnormal level. From 2007 to 2011, Fritz's abnormal TSH level went untreated.

On October 12, 2011, Alice Fritz visited Christ Clinic and reported fatigue and problems coping with posttraumatic stress disorder (PTSD). The Christ Clinic chart for that visit indicates Fritz suffered from malaise, chronic fatigue, and elevated blood sugar levels. Dr. Scott Edminster noted Fritz's reason for malaise and fatigue could be related to hypothyroidism. Dr. Edminster wrote, "[u]pon review, I note that [Fritz] had an elevated TSH back in Dec. 2007, and it hasn't been repeated since then." Clerk's Papers (CP) at 64. On October 18, 2011, Danielle Riggs, ARNP, electronically signed Fritz's October 12 chart notes.

2

Christ Clinic practitioners probably prescribed Levothyroxine sometime after Alice Fritz's October 12, 2011, visit. Fritz's next chart note, dated August 2, 2012, lists Fritz's medication as including Levothyroxine. Levothyroxine suppresses high levels of TSH.

Alice Fritz continued treatment at Christ Clinic in the following years and predominantly received counseling for her PTSD and depression. On February 5, 2014, Fritz returned to Christ Clinic with a large mass in the right side of her neck. The same day, Larry Carpenter, PA-C, scheduled an ultrasound to evaluate the mass. Health care providers diagnosed Fritz with thyroid cancer. A surgeon removed the tumor, and Fritz underwent radiation treatment in May 2014. Subsequent laboratory tests revealed no remaining markers for thyroid cancer.

## PROCEDURE

Alice Fritz filed suit against defendants Rockwood Clinic, PS, Christ Clinic/Christ Kitchen, and Danielle Riggs, ARNP. Fritz alleges Riggs, an employee of Christ Clinic, performed negligently by failing to timely respond to and treat her abnormal thyroid condition and by failing to secure her informed consent. Fritz also alleges that the defendants breached their fiduciary duty to Fritz. Fritz claims that Riggs's and Christ Clinic's breaches of duty resulted in an untimely diagnosis of her thyroid tumor. In turn, the late diagnosis allowed the thyroid tumor to grow to such a size that surgeons damaged

Fritz's vocal cords when surgically excising the tumor. She also alleges profound aggravation of her pre-existing mental and emotional condition resulting from the negligent treatment.

Christ Clinic and Danielle Riggs denied liability, causation, and damages. Both brought a summary judgment motion to dismiss all causes of action. They argued that Washington law does not support Alice Fritz's informed consent claim because the cause of action arises from the alleged negligence. Christ Clinic and Riggs argued the breach of fiduciary duty claim must be dismissed because the cause of action does not come within any action authorized by the legislature pursuant to RCW 7.70.010. Finally, the clinic and its nurse practitioner argued that Fritz lacked a competent expert to support her claims regarding a breach of the standard of care and causation.

On the day before the summary judgment hearing, Alice Fritz submitted a declaration from Brian Campbell, Ph.D., a neuropsychologist. Christ Clinic and Danielle Riggs moved to strike the declaration due to its untimely filing, lack of foundation, hearsay statements, and conclusory opinions. Even though Dr. Campbell is a psychologist and not a physician, Christ Clinic and Riggs did not argue Dr. Campbell was unqualified to render causation opinions in this case. The trial court declined to strike Campbell's declaration.

4

In his declaration, Dr. Brian Campbell averred that he evaluated and he treats Alice Fritz. Campbell appended, as exhibit B to his declaration, a November 22, 2016, report he prepared about Alice Fritz for the use of Dr. Saima Ahmad of Providence Internal Medicine. The report recited that Dr. Campbell received medical records from Providence Medical Group that related, among other things, a history of depression, insomnia, acquired hypothyroidism, type II diabetes, hepatitis C, and thyroid cancer. Dr. Campbell opined that, based on his review of Fritz's medical records and the opinions of a nurse practitioner, Alice Fritz suffered an aggravation of her pre-existing psychological and neuropsychological conditions as a result of violations in the standard of care by Danielle Riggs and Christ Clinic.

The trial court granted Christ Clinic's and Danielle Riggs's summary judgment motion in full. The trial court concluded that the breach of fiduciary duty cause of action failed as a matter of law under chapter 7.70 RCW, the statutes authorizing suit for injuries resulting from health care. The trial court also dismissed Alice Fritz's informed consent claim because Fritz's delayed diagnosis liability theory conflicted with an informed consent claim. Finally, the trial court concluded Dr. Brian Campbell's declaration lacked a factual foundation and contained conclusory statements. Thus, Fritz failed to present an

issue of fact to defeat the motion to dismiss her standard of care or medical malpractice cause of action.

After the trial court entered a summary judgment order dismissing Alice Fritz's suit, Fritz moved for reconsideration based on CR 59(a)(1), (3), (4), and (8). In support of reconsideration, Fritz filed a declaration that included an offer of proof that included Dr. Brian Campbell's curriculum vitae and a declaration clarification of Brian R. Campbell. Alice Fritz also filed a memorandum in support of the motion for reconsideration. Christ Clinic and Danielle Riggs filed a memorandum in opposition to Fritz's motion for reconsideration.

The trial court denied Alice Fritz's motion for reconsideration. The court noted that Fritz did not brief or provide authority for the application of CR 59(a)(1), (a)(3) or (a)(8). The court further noted that Fritz offered no explanation as to why she failed to earlier supply the court with Dr. Brian Campbell's revised testimony.

No. 36420-8-III
*Fritz v. Rockwood Clinic, P.S.*

LAW AND ANALYSIS

On appeal, Alice Fritz does not challenge the trial court's dismissal of her causes of action for breach of fiduciary duty and violation of the professional standard of care. She only assigns error to the dismissal of her informed consent cause of action.

Alice Fritz argues the trial court erred in dismissing her informed consent action because Fritz presented evidence supporting each of the four prongs set forth in RCW 7.70.050(1). Fritz argues she presented sufficient facts to establish that Christ Clinic and Danielle Riggs failed to inform her of the abnormal thyroid condition during her treatment at Christ Clinic from 2007 to 2011, that a reasonable person would want to know of an abnormal thyroid condition, and that Dr. Brian Campbell's testimony showed untreated hypothyroidism aggravated her preexisting psychological condition. We agree with her that she presented such facts, but those facts do not sustain a claim for lack of informed consent.

Chapter 7.70 RCW exclusively governs an action for damages for an injury occurring as a result of health care. RCW 7.70.010; RCW 7.70.030; *Branom v. State*, 94 Wn. App. 964, 969, 974 P.2d 335 (1999). RCW 7.70.030 states:

> No award shall be made in any action or arbitration for damages for injury occurring as the result of health care . . . , unless the plaintiff establishes one or more of the following propositions:

7

> (1) That injury resulted from the failure of a health care provider to follow the accepted standard of care;
> (2) That a health care provider promised the patient or his or her representative that the injury suffered would not occur;
> (3) That injury resulted from health care to which the patient or his or her representative did not consent.

Subsection (1) of the statute refers to a cause of action for malpractice or medical negligence. Subsection (3) of the statute refers to a cause of action for lack of informed consent.

Informed consent and medical negligence are distinct claims that apply in different situations. *Gomez v. Sauerwein*, 180 Wn.2d 610, 617, 331 P.3d 19 (2014). While the two causes of action sometimes overlap, they remain two different theories of recovery with independent rationales. *Gomez v. Sauerwein*, 180 Wn.2d at 617. Allegations supporting one claim normally will not support the other. *Gustav v. Seattle Urological Associates*, 90 Wn. App. 785, 789, 954 P.2d 319 (1998).

The doctrine of informed consent refers to the requirement that a physician, before obtaining the consent of his or her patient to treatment, inform the patient of the treatment's attendant risks. *Smith v. Shannon*, 100 Wn.2d 26, 29, 666 P.2d 351 (1983). The doctrine is premised on the fundamental principle that every human being of adult years and sound mind has a right to determine what shall be done with his or her own body. *Smith v. Shannon*, 100 Wn.2d at 29.

RCW 7.70.050 codifies the elements of a cause of action for informed consent:

> (1) The following shall be necessary elements of proof that injury resulted from health care in a civil negligence case or arbitration involving the issue of the alleged breach of the duty to secure an informed consent by a patient or his or her representatives against a health care provider:
> (a) That the health care provider failed to inform the patient of a material fact or facts relating to the treatment;
> (b) That the patient consented to the treatment without being aware of or fully informed of such material fact or facts;
> (c) That a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts;
> (d) That the treatment in question proximately caused injury to the patient.

Note that the statutory cause of action assumes that the health care provider formed a diagnosis, recommended a course of treatment based on the diagnosis, and the patient consented to the recommended treatment. These assumptions are missing when the health care provider fails to make a diagnosis and never recommends a course of treatment.

The Washington Supreme Court announced, in *Backlund v. University of Washington*, 137 Wn.2d 651 (1999), that a claim based on a failure to diagnose or a misdiagnosis does not fall under the rubric of informed consent. The court wrote:

> A physician who misdiagnoses the patient's condition, and is therefore unaware of an appropriate category of treatments or treatment alternatives, may properly be subject to a negligence action where such

> misdiagnosis breaches the standard of care, but may not be subject to an
> action based on failure to secure informed consent.

*Backlund v. University of Washington*, 137 Wn.2d at 661 (footnote omitted). The duty to

inform does not arise until the doctor becomes aware of the condition by diagnosing it.

*Gustav v. Seattle Urological Associates*, 90 Wn. App. at 790.

　　*Gomez v. Sauerwein*, 180 Wn.2d 610 (2014), wherein the high court applied the

*Backlund* rule, informs our decision. Christina Palma Anaya presented to a healthcare

provider with a suspected urinary tract infection. Urine and blood tests revealed a culture

positive for yeast. Although Dr. Mark Sauerwein had concerns about the test result, he

decided to wait on further treatment based on a belief of a false positive. Dr. Sauerwein

did not tell Anaya about the test result. Days later the lab positively identified cabdida

glabrata as the yeast in Anaya's blood. Anaya's condition worsened, treatment came too

late to stop the infection from spreading; Anaya developed fungal sepsis, and she

perished. Anaya's estate brought an action against Dr. Sauerwein and the clinic for

malpractice and failure to obtain informed consent. The defense moved for summary

judgment on the informed consent claim. The trial court granted the motion and

dismissed the informed consent claim. The Supreme Court affirmed. The Supreme Court

observed:

> Simply put, a health care provider who believes the patient does not have a particular disease cannot be expected to inform the patient about the unknown disease or possible treatments for it. In such situations, a negligence claim for medical malpractice will provide the patient compensation if the provider failed to adhere to the standard of care in misdiagnosing or failing to diagnose the patient's condition.
>
> In misdiagnosis cases, this rule is necessary to avoid imposing double liability on the provider for the same alleged misconduct.

*Gomez v. Sauerwein*, 180 Wn.2d at 618.

*Gustav v. Seattle Urological Associates*, 90 Wn. App. 785 (1998), is also instructive. Robert Gustav sued his physicians both for negligent failure to diagnose his prostate cancer and for failure to obtain informed consent. The physicians moved for summary judgment on the ground that Gustav's informed consent claim was subsumed in his negligent failure to diagnose claim. Robert Gustav alleged that the doctors negligently failed to order diagnostic tests as frequently as appropriate and failed to order completion of a biopsy for the four areas of the prostate gland not tested. Gustav's informed consent claim similarly alleged that the doctors failed to completely inform him of the appropriate frequency of diagnostic testing, the dangers involved in not testing more frequently, and the consequences of not completing the biopsy.

In *Gustav v. Seattle Urological Associates*, the trial court granted summary judgment dismissal of the informed consent claim. On appeal, this court affirmed. This court reasoned:

> Gustav's allegations involved negligence prior to treatment, not informed consent concerning a treatment the doctor proposed to use. These are two distinct causes of action. Allegations supporting one normally will not support the other.

*Gustav v. Seattle Urological Associates*, 90 Wn. App. at 789. The court noted that both

Gustav's negligence claims and his informed consent claim were based on his doctor's

failure to diagnose his prostate cancer. The court explained, "[n]othing in these

allegations relates to a failure to warn of potential consequences of treating Gustav's

cancer, a condition he could not have treated because he failed to diagnose it." *Gustav v.

Seattle Urological Associates*, 90 Wn. App. at 790. In so holding, the *Gustav* court noted

that the duty to disclose does not arise until the doctor becomes aware of the condition by

diagnosing it.

Alice Fritz characterizes her theory of recovery as that of lack of informed consent

because Danielle Riggs failed to "inform" her in 2007 that tests showed an abnormal TSH

level. Fritz also implies that Riggs formed a diagnosis because the test results established

the high levels. With this characterization, Fritz misunderstands the nature of the

informed consent claim. The claim redresses the failure of the health care provider to

inform the patient, after an accurate diagnosis, of the ramifications of a course of

treatment before executing the treatment. Riggs never declared in the records that she

discovered the high levels of TSH. Failing to grasp what records show is a failure to

diagnose, not a diagnosis. Riggs never formed a diagnosis of an abnormal TSH level and thus never recommended a course of treatment for the ailment.

Next, Alice Fritz contends that Dr. Svetlana Cox obviously suspected a thyroid abnormality, because she would not have otherwise ordered testing for TSH level. But suspecting a condition exists is not the same as diagnosing the condition.

Alice Fritz faults the trial court for purportedly stating that a patient cannot sustain a cause of action for informed consent and a cause of action for malpractice based on the same conduct or failure to act by the health care provider. We need not decide whether the two causes of action are always mutually exclusive.

In her appellate briefing, Alice Fritz also addresses the trial court's ruling discounting the conclusion in Dr. Brian Campbell's declaration that the negligence of Christ Clinic and Danielle Riggs aggravated Fritz's preexisting psychological conditions. Nevertheless, Fritz assigns no error to the trial court's dismissal of her medical malpractice cause of action. We do not review a claimed error unless the appellant assigns error to it. RAP 10.3(a)(4), 10.3(g); *BC Tire Corp. v. GTE Directories Corp.*, 46 Wn. App. 351, 355, 730 P.2d 726 (1986). Even if the trial court did not discount Dr. Campbell's testimony, the court did not err in dismissing the informed consent cause of action based on the law.

No. 36420-8-III
*Fritz v. Rockwood Clinic, P.S.*

CONCLUSION

We affirm the trial court's dismissal on summary judgment of Alice Fritz's cause

of action for lack of informed consent.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, C.J.

14