IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| REBEKAH GUITAR, individually,<br><br>     Appellant,<br><br>  v.<br><br>OLYMPIA ORTHOPAEDIC ASSOCIATES, PLLC, a Washington Professional Limited Liability Company; DOMINIC FEMIANO, M.D. and "JANE DOE" FEMIANO, husband and wife,<br><br>     Respondents. | No. 86164-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DíAZ, J. — Rebekah Guitar appeals a superior court's dismissal on summary judgment of her medical negligence suit, arising from a fall she took at her physician's office. Guitar alleges the court erred in finding that her proffered medical expert's testimony was legally insufficient. We hold that Guitar's expert's testimony failed to establish her familiarity with Washington's standard of care, and failed to explain the basis of any such familiarity, as required under RCW 7.70.040(1)(a) and caselaw. Thus, we affirm.

## I.   BACKGROUND

In April 2018, Dr. Dominic Femiano injected cortisone into the iliopsoas tendon of Guitar's right hip to treat pain.[1]  The procedure took place at Olympia Orthopaedic Associates (OOA).  A short while later, Guitar lost feeling in her right thigh and fell to the ground while still at OOA, injuring her right ankle.

Guitar filed a medical negligence suit in Thurston County Superior Court against, inter alia, Dr. Femiano and OOA (hereinafter "Respondents") in February 2021, for the procedures she underwent prior to the fall.

The Respondents moved for summary judgment in July 2022.  Respondents argued that Guitar had failed to provide any expert medical testimony to support her claims as required by law.  In response, Guitar provided a nine-paragraph declaration from Dr. Georgine Nanos, a Californian physician board-certified in family medicine.  Even still, the Respondents argued that Dr. Nanos' declaration did not establish the required elements for expert testimony on medical negligence.

Following a hearing in August 2022, the superior court continued the motion for the express purpose of giving Guitar two weeks to supplement Dr. Nanos' testimony.  Further, while it found that Dr. Nanos possessed the "sufficient expertise necessary on the issues," the court specifically put Guitar on notice that its "reading of the caselaw is there needs to be *much more specific in terms of*

---

[1] Before an injection into the iliopsoas tendon, the local region is anesthetized with a needle under ultrasound guidance.  There is no claim against an anesthetist.

*qualifications, much more specific in terms of the opinions on standard of care*, and much more specific in terms of proximate cause." (emphasis added).

In October 2022, and as will be elaborated on below, Dr. Nanos provided a supplemental declaration, now twelve paragraphs long. The same month, the superior court held a second hearing and ultimately granted summary judgment for the Respondents. The court explained that Dr. Nanos' supplemented declaration still was insufficient to establish numerous elements of her malpractice claim, including her failure to establish the applicable standard of care, how that standard of care was breached, and causation.

Guitar timely appeals.

## II. ANALYSIS

Summary judgment is properly granted if the pleadings, affidavits, depositions, or admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c).

We review a granting of summary judgment de novo. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). We also review de novo whether sufficient evidence supports an expert opinion. Hill v. Sacred Heart Med. Ctr., 143 Wn. App. 438, 445-46, 177 P.3d 1152 (2008). Summary judgment is appropriate if a plaintiff fails to produce sufficient evidence supporting the essential elements of their claim. Id. at 445. "On summary judgment review, we may affirm the trial court's decision on any basis within the record." Davidson Serles & Assocs. v. City of Kirkland, 159 Wn. App. 616, 624, 246 P.3d 822 (2011).

Procedurally, on its motion, the defendant initially bears the burden of showing the plaintiff lacks sufficient evidence to support an essential element. Boyer v. Morimoto, 10 Wn. App. 2d 506, 519, 449 P.3d 285 (2019). For example, the defendant can meet this burden by showing the plaintiff lacks adequate expert testimony that the defendant violated Washington's standard of care. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The burden then shifts to the plaintiff to produce a sufficient declaration from a qualified expert witness. Id. On summary judgment, this burden is a burden of production, not persuasion. Renz v. Spokane Eye Clinic, P.S., 114 Wn. App. 611, 622-23, 60 P.3d 106 (2002). We view the evidence and any inferences that may be drawn from that evidence in a light most favorable to the nonmoving party. Hill, 143 Wn. App. at 445.

In Washington, RCW 7.70 exclusively governs the requirements of a medical negligence claim for damages. Branom v. State, 94 Wn. App. 964, 969, 974 P.2d 335 (1999). RCW 7.70.030 generally presents three paths for a medical negligence action. Guitar's chosen path is to show "injury resulted from the failure of a health care provider to follow the accepted standard of care[.]" RCW 7.70.030(1).

Under RCW 7.70.040(1), a plaintiff pursuing an RCW 7.70.030(1) claim must establish, in pertinent part, the "health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, *in the state of Washington*, acting in the same or similar circumstances[.]" RCW

7.70.040(1)(a) (emphasis added). As a general rule, a qualified medical expert must testify to the applicable standard of care, per RCW 7.70.030(1) and .040(1). Grove v. PeaceHealth St. Joseph Hosp., 182 Wn.2d 136, 144, 341 P.3d 261 (2014). Whether an expert is qualified to render an opinion is a preliminary finding of fact under ER 104(a). Boyer, 10 Wn. App. 2d at 521.

A physician licensed in another state may testify as to Washington's standard of care. Id. If the expert does not practice in Washington, we look to see if that expert is familiar specifically with the Washington standard of care. Id. One way an out-of-state expert may establish familiarity with the Washington standard of care is to provide admissible testimony that a national standard of care exists in this state and that the defendant physician violated the national standard of care. Id.; Driggs v. Howlett, 193 Wn. App. 875, 898-99, 371 P.3d 61 (2016). "Increasingly medical experts testify that Washington follows a national standard of care." Boyer, 10. Wn. App. 2d at 520. Another way an out-of-state expert could demonstrate their familiarity with the Washington standard is to "indicate [they] spoke with any Washington physician or studied any literature concerning Washington standards." Id. at 524. Regardless of the precise method this fact is shown, "[w]e remain bound, however, by our legislature's declaration that the trier of fact must find and apply *a state standard of care*." Id. (emphasis added) (citing RCW 7.70.040).

Here, in both her original and supplemental declarations, Dr. Nanos states she is "familiar with *the standards of care* concerning the care and treatment of patients undergoing" the (hip iliopsoas injection) procedure, post-care and

5

treatment in question. After describing her role in this matter and her experience with the procedure, in both declarations, she concludes by declaring the care of "Dr. Femiano fell below the *national standards* of care." Nowhere in either declaration does Dr. Nanos tie "the standards of care" or "national standards" to the standard of care in Washington, let alone explain *how* she was familiar specifically with Washington's standard of care. In fact, no statement in either of Dr. Nanos' declarations even contains the term "Washington."

Nonetheless, Guitar argues that, because the procedure is so "intrusive," "it is highly unlikely the hip iliopsoas procedure in Washington state varies greatly from other states." Tellingly, there is no citation to either of Dr. Nanos' declarations in support of this claim.

Even if Dr. Nanos' declarations could be read to contain such a suggestion, an expert's testimony must do more than merely express a mere "'educated assumption that the standard of care was the same across the country'" and must specifically tie the national standard to Washington's. Driggs, 193 Wn. App. at 901-02 (quoting Winkler v. Giddings, 146 Wn. App. 387, 392-93, 190 P.3d 117 (2008)). Dr. Nanos generally referencing "national standards" without specifically tying her testimony to Washington is just the type of "educated assumption" disapproved of in Driggs and Winkler. Id.

Moreover, as in Boyer, Dr. Nanos "failed to disclose *how* [s]he knew Washington's standard to equate to a national standard. [Sh]e did not suggest [s]he had any exposure to the [relevant] practice [] in Washington State. [Sh]e did not indicate [s]he spoke with any Washington physician or studied any literature

concerning Washington standards." Boyer, 10 Wn. App. 2d at 524 (emphasis added).

To be clear, we do not hold that an out of state expert always must speak to a Washington physician, always must read a certain piece of literature, or obtain exposure to our local standard of care in a certain way. But RCW 7.70.040(1) has long been held to require that an expert explain that they are familiar, and *how* they became familiar, with the standard of care in Washington, whether the standard is a uniquely local standard or equivalent to a national standard.

In the present case, Dr. Nanos' declarations fail to establish her familiarity with Washington's standard of care or, even if one can be implied, how she became familiar with that standard.

Dr. Nanos' testimony was required to establish all elements contained within RCW 7.70.040(1). Given the failure to establish one of the required elements, we need not consider any of the other issues presented on appeal. Wash. State Farm Bureau Fed'n v. Gregoire, 162 Wn.2d 284, 307, 174 P.3d 1142 (2007) ("'Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented.'") (quoting Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55, 68, 1 P.3d 1167 (2000)).

### III.    CONCLUSION

For the reasons above, we affirm the superior court's grant of summary judgment.

Díaz, J.

WE CONCUR:

Chung, J.                                Cohen, J.