**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

ESTATE OF KAREN THIEL; LAMAR
THIEL,

          Plaintiffs - Appellants,

  v.

ADAMS COUNTY PUBLIC HOSPITAL
DISTRICT #2, a Washington Public
Hospital District; MATTHEW MECHAM,

          Defendants - Appellees.

No. 24-5512

D.C. No.
2:21-cv-00279-SAB

MEMORANDUM*

Appeal from the United States District Court
for the Eastern District of Washington
Stanley Allen Bastian, District Judge, Presiding

Submitted August 12, 2025**
Seattle, Washington

Before: HAWKINS, McKEOWN, and WARDLAW, Circuit Judges.

Karen Thiel's estate and her surviving spouse, Lamar Thiel (collectively

"Plaintiffs"), appeal the district court's dismissal of their Washington Law Against

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

Discrimination ("WLAD") claim[1] against East Adams Rural Hospital ("EARH") and Nurse Matthew Mecham (collectively "Defendants"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

The complaint alleges that Karen Thiel suffered from Lewy body dementia. Due to her dementia, Thiel had "limited communication abilities" and required "special attention and assessment." On January 9, 2019, Thiel was admitted into the swing bed facility at EARH. On January 29, 2019, Thiel attempted to stand up from her chair and fell, breaking her hip. Immediately after the fall, defendant Matthew Mecham, a registered nurse at EARH, heard Thiel call for help and complain about hip pain, but did nothing. EARH staff placed Thiel back in her chair and did not examine her for injuries. No one immediately charted the fall, nor did anyone inform other staff about the fall. Other EARH staff, unaware of the fall, later attempted to make Thiel walk on multiple occasions, which was excruciatingly painful. Thiel's broken hip was detected the day after the fall by physical therapy staff when they also attempted to make her walk. Mecham then attempted to create a backdated record of the fall on Thiel's chart, thirty-six hours after the fall.

---

[1] Plaintiffs brought five additional claims: ordinary negligence, medical negligence, and three claims under 42 U.S.C. § 1983. On summary judgment, the district court disposed of Plaintiffs' federal claims and remanded the medical negligence claim to Washington Superior Court. Plaintiffs do not appeal the judgments on these claims.

24-5512

Plaintiffs sued Defendants, alleging state and federal law violations. The district court granted Defendants' motion to dismiss in part, dismissing Plaintiffs' ordinary negligence and WLAD claims as preempted by Washington's medical malpractice statute—RCW 7.70. On appeal Plaintiffs challenge only the dismissal of the WLAD claim.[2]

The district court correctly concluded that Plaintiffs' WLAD claim was preempted by RCW 7.70. Under Washington law, a plaintiff seeking damages for "injury occurring as a result of health care" must seek relief under RCW 7.70 exclusively. Wash. Rev. Code Ann. § 7.70.010. Section 7.70 preempts "all civil actions and causes of action, whether based on tort, contract, or otherwise." *Id.* "Health care" under RCW 7.70.010 is "the process in which [a health care provider is] utilizing the skills which he had been taught in examining, diagnosing, treating, or caring for the plaintiff as his patient." *Branom v. State*, 94 Wash. App. 964, 969–70 (1999) (citation omitted). This "utilizing the skills" test encompasses both acts and omissions of health care. *Id.* Washington courts have interpreted this

---

[2] Plaintiffs initially presented a second issue for review—whether the court should correct a scrivener's error contained in the district court's judgment. However, on July 2, 2025, Plaintiffs submitted a notice that the scrivener's error was corrected, mooting the issue. Pursuant to the amended order, only Plaintiffs' medical malpractice claim has been remanded.

statute to "sweep[] broadly" and to "govern[] exclusively" all civil actions for damages for injury occurring as a result of health care. *Id.* at 969.

Here, Ms. Thiel's injuries arose from her health care providers' failure to supervise her, physically examine her, and chart her injuries—all of which are skills that nurses and doctors are taught to utilize in examining, diagnosing, treating, or caring for patients. *See Reagan v. Newton*, 7 Wash. App. 2d 781, 792–93 (2019) (finding that a doctor performing an examination constituted "health care"); *Est. of Essex by & through Essex v. Grant Cnty. Pub. Hosp. Dist. No. 1*, 3 Wash. 3d 1, 16–17 (2024) (holding medical malpractice claim should survive summary judgment when nurses failed to timely document or report patient's symptoms, causing a delay in patient's diagnosis.).

Plaintiffs argue these actions should not be considered "health care" because they were not motivated by medical judgment and instead were motivated by discriminatory intent, citing *Reed v. ANM Health Care*, 148 Wash. App. 264, 271 (2008). However, recent authority suggests that the Washington Supreme Court has not adopted *Reed*'s distinction between motivations for health care decisions. In *M.N. v. MultiCare Health Sys., Inc.*, 2 Wash. 3d 655, 672 (2024), the Washington Supreme Court held all patients who received injections while a particular nurse was on duty, even those not assigned to this specific nurse, had valid RCW 7.70 claims based on their potential exposure to hepatitis C. The court

reasoned that a nurse's diversion of narcotics for herself and injection of her patients with contaminated needles fell within RCW 7.70's definition of "health care" because (1) the plaintiffs were the nurse's patients; (2) injections are a skill the nurse was taught; and (3) the plaintiffs' injuries were the result of the nurse's failure to follow the accepted standard of care. *Id.* at 663. The reasons for the nurse's failure to follow that standard were treated as immaterial. Thus, even if Thiel's medical providers were motivated by discriminatory intent, their alleged conduct remains "health care" within the meaning of the statute as interpreted by the state's highest court. Plaintiffs' WLAD claim is preempted.

**AFFIRMED.**